UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

ARAYIK KHACHATRYAN,                )      No. CV 13-5789-PLA
                                   )
            Plaintiff,             )
                                   )
      v.                           )      **MEMORANDUM OPINION AND ORDER**
                                   )
CAROLYN W. COLVIN,                 )
ACTING COMMISSIONER OF SOCIAL      )
SECURITY ADMINISTRATION,           )
                                   )
            Defendant.             )
_____)

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 14, 2013, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on September 12, 2013, and January 16, 2014.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 18, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 9, 1965.  [Administrative Record ("AR") at 19, 62.]  He has at least a high school education, and past relevant work experience as a customs inspector, electrician, taxi driver, and home attendant.  [AR at 19, 109, 128-35, 190, 210.]

On September 30, 2010, plaintiff filed an application for Supplemental Security Income payments, alleging that he has been unable to work since July 31, 2010.  [AR at 11, 29, 96-102, 115, 136.]   After his application was denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 11, 63-66.]  A hearing was held on March 14, 2012, at which time plaintiff appeared with a non-attorney representative and testified on his own behalf. [AR at 11, 26-61.]  The ALJ obtained the testimony of a vocational expert ("VE") by propounding interrogatories subsequent to the hearing.  [AR at 195-202, 207-14.]  On May 18, 2012, the ALJ issued a decision concluding that plaintiff was not disabled.  [AR at 11-21.]  Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on July 9, 2013.  [AR at 1-5, 7.] When the Appeals Council denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1   1998) (same).    When determining whether substantial evidence exists to support the
2   Commissioner's decision, the Court examines the administrative record as a whole, considering
3   adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);
4   see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must
5   consider the entire record as a whole and may not affirm simply by isolating a specific quantum
6   of supporting evidence.") (internal quotation marks and citation omitted).   "Where evidence is
7   susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan,
8   528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin.,
9   466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the
10  ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.'").

11

12                                              **IV.**

13                          **THE EVALUATION OF DISABILITY**

14          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable
15  to engage in any substantial gainful activity owing to a physical or mental impairment that is
16  expected to result in death or which has lasted or is expected to last for a continuous period of at
17  least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.
18  1992).

19

20  **A.      THE FIVE-STEP EVALUATION PROCESS**

21          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing
22  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,
23  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must
24  determine whether the claimant is currently engaged in substantial gainful activity; if so, the
25  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in
26  substantial gainful activity, the second step requires the Commissioner to determine whether the
27  claimant has a "severe" impairment or combination of impairments significantly limiting his ability
28  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his application date, September 30, 2010.  [AR at 13-14.]  At step two, the ALJ concluded that plaintiff has the severe impairment of "depressive disorder, not otherwise specified."[1]  [AR at 14.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.  [AR at 15.]  The ALJ further found that plaintiff retained the residual functional

---

[1]    The ALJ found plaintiff to have several "conditions of ill being," including "history of insulin dependent diabetes mellitus; status post mitral valve replacement in July 2010; hyperlipidemia; hypertension; and depressive disorder, not otherwise specified." [AR at 14.] The ALJ specifically found that only plaintiff's "mental condition causes more than minimal limitation [on plaintiff]'s ability to perform basic work activities," and therefore, "according to the regulations[, plaintiff] has a severe impairment."  [Id.]

4

1  capacity ("RFC")² to perform a full range of work at all exertional levels with the following

2  limitations:

> [plaintiff] can frequently perform detailed, complex work, but may perform simple, routine and repetitive work, with occasional contact with coworkers, supervisors, and the general public. Also, he can perform work at stress level four on a scale of one to ten, ten being, by example, the work of an air traffic controller, and one being the work of a night dishwasher, as these occupations are generally performed in the national economy.

7  [AR at 16.]  At step four, based on plaintiff's RFC and the VE's responses to the ALJ's

8  interrogatories, the ALJ concluded that plaintiff is unable to perform any past relevant work.  [AR

9  at 19.]  At step five, based on plaintiff's RFC, vocational factors and the VE's statements, the ALJ

10 found that there are jobs existing in significant numbers in the national economy that plaintiff can

11 perform, including work as a "[p]olisher," "[p]ackager," and "[y]ardworker."   [AR at 20.]

12 Accordingly, the ALJ determined that plaintiff was not disabled at any time since September 30,

13 2010.  [Id.]

14

15                                              **V.**

16                               **THE ALJ'S DECISION**

17       Plaintiff contends that the ALJ: (1) failed to properly determine plaintiff's credibility and RFC,

18 and also improperly discounted the credibility of plaintiff's mother, a lay witness; (2) failed to

19 properly consider plaintiff's "mental and physical limitations in combination and [plaintiff's] ability

20 to sustain work activity[;]" and (3) improperly relied on VE testimony.  [Joint Stipulation ("JS") at

21 6-16, 23-32, 34-38, 40.]  As explained below, the Court respectfully disagrees with plaintiff and

22 affirms the ALJ's decision.

23 /

24 /

25 /

26

27 _____

28    ²   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

**A.    CREDIBILITY**

      **1.    Plaintiff's Credibility**

Plaintiff contends that the ALJ improperly evaluated plaintiff's credibility.  [JS at 7-16, 23-25.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In a questionnaire entitled "Disability Determination for Social Security: Pain and Other Symptoms," dated December 14, 2010, plaintiff indicated that he suffered from "unusual fatigue," and that he requires two or more naps every day of between four and six hours. [AR at 136-37.] He stated that he experiences chest pain, and also that he "can't [feel his] left legs [sic] upper side, if I am touching, it's becoming into the pain [sic]." [AR at 136.]  He wrote that his chest pains usually last "an hour." [Id.]  He indicated that he is able to stand for one hour and walk for 15 minutes before the pain

1  occurs.  [Id.]  He also wrote: "This unusual filling [sic] in my leg making [sic] me too nervous[].  I got this

2  after the bleeding in my head brain."  [AR at 137.]

3        In a "Function Report" dated December 14, 2010, plaintiff described his daily activities as

4  "mostly ... [lying] down on the sofa, watching TV, sleeping, having my meals, medication, going

5  out to walk [for between 10 and 20 minutes]," and "[o]nce a week doing shopping[]," as well as

6  visiting doctors "if necessary."  [AR at 138.]  Plaintiff indicated that he has difficulty falling asleep,

7  that he uses the bathroom two or three times "during sleep time," and that he feels "unrested in

8  the morning."  [AR at 139.]  He wrote that he needs to be reminded to bathe, care for his hair,

9  shave, and take medication "on time."  [AR at 139-40.]  He stated that he does not prepare his

10  own meals because "I am becoming [sic] very nervous[].  I can't concentrate and becoming [sic]

11  [tired] very soon."  [AR at 140.]  He also stated that he does not do house or yard work because

12  he "can't concentrate," and he "becomes nervous" and feels "weak."  [AR at 141.]  Despite

13  indicating that he is generally able to handle money and bills, plaintiff wrote that he "forget[s] to

14  take [his] change," and that it is "hard ... to calculate money."  [AR at 141-42.]  He stated: "I can't

15  even watch TV, because I can't concentrate, I am becoming nervous[]."  [AR at 142.]  Plaintiff

16  wrote that he visits friends about "once a week," but that he needs someone to accompany him.[3]

17  [Id.]  Plaintiff stated that his "illnesses, injuries, or conditions" affect his ability to lift, stand, walk,

18  climb stairs, hear, talk, remember, concentrate, and understand.  [AR at 143.]  Specifically, plaintiff

19  wrote: "I can lift only 20 lbs., stand [for one] hour, walk [for] 15 [minutes], stair climbing [sic] - 10

20  steps.  [My] left ear not hearing at all [sic].  My memory, concentration, understanding became

21  worse [sic]."  [Id.]  According to plaintiff, he can walk for half a block before needing to stop and

22  rest for between three and five minutes before resuming, pay attention for between 20 and 30

23  minutes, and does not finish tasks that he starts, such as conversations, chores, reading, or

24  watching movies.  [Id.]  Finally, he provided that he becomes nervous around authority figures,

25

26

27  _____

28     [3]   In the same Function Report, plaintiff indicated that he is able to travel by walking, driving, and riding in a car, that he is able to go out alone, and that he is able to drive himself.  [AR at 141.]

1  handles stress "very bad[ly,]" and sometimes has "problems with [his] speaking, explaining, [and]

2  hearing." [AR at 144.]

3        At the administrative hearing, plaintiff described his symptoms in September of 2010 as

4  including "high blood pressure" that was "not stable," as well as "headache, sometimes dizziness

5  and even, in my eyes, darkness." [AR at 51.]  He also indicated that he has numbness on the

6  upper part of his left leg, which he said makes him nervous.  [AR at 51-52.]  Plaintiff stated that

7  when he sleeps, he bleeds from his mouth and nose, and that a hearing problem he had became

8  worse following his "stroke and heart attack." [AR at 52-53.]  He also stated that, after a heart

9  operation in which he had a "mitral valve replacement," he could not walk quickly, and he lost "20

10  percent of [his] power." [AR at 53-54.]  Plaintiff testified that, after surgery, he was only able to

11  drive for 20 minutes at a time, and that "[a]fter that, I am becoming very nervous," "[s]ometimes

12  I become very tired, too tired," and that he loses concentration and experiences darkness in his

13  eyes. [AR at 58-59.]  He explained that a "provider" helps him to wash and bathe, he "sometimes"

14  gets help dressing himself, he does not prepare his own meals, and becomes "very tired" after 20

15  or 30 minutes of reading or looking at a computer screen.  [AR at 59.]

16        At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically

17  determinable impairments could reasonably be expected to cause the alleged symptoms." [AR at

18  17.]  The ALJ nevertheless found that plaintiff's subjective statements were "not credible to the

19  extent they are inconsistent with the [RFC] assessment." [Id.]  Thus, at step two, as the record

20  contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and

21  convincing reasons" for rejecting his subjective symptom testimony.  See Lingenfelter, 504 F.3d at

22  1036.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible

23  and what evidence undermines [plaintiff's] complaints." Reddick, 157 F.3d at 722 (internal quotation

24  marks and citation omitted).

25

26

27

_____

28        [4]     The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest
plaintiff was doing so.

In his decision, the ALJ rejected plaintiff's subjective symptom testimony because he found: (1) a "lack of objective medical evidence to substantiate [plaintiff's] claims[;]" (2) medical opinion evidence from "several" physicians found plaintiff "to be much more capable than he claims[;]" (3) plaintiff's lack of "mental health treatment" was inconsistent "with the alleged degree of psychiatric impairment[;]" (4) plaintiff's "poor work record" shows "little propensity to work, even when admittedly not disabled, and plaintiff "reported no earnings and paid no taxes" during a five-year period when he "apparently worked[;]" and (5) plaintiff's "activities of daily living are not consistent with the alleged degree of pain and impairment." [AR at 17-18.]

The ALJ provided clear and convincing reasons for rejecting plaintiff's subjective allegations. First, the ALJ's finding that plaintiff's credibility was "reduced by the lack of objective medical evidence to substantiate his claims" is supported by substantial evidence. [AR at 17.] While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As an initial matter, the Court observes that plaintiff does not dispute the ALJ's findings that none of plaintiff's complaints with respect to his physical condition amount to a "severe" impairment. [See, generally, JS at 6-16, 23-32, 34-48, 40; AR at 14.] Next, plaintiff alleged that his disability began following a stroke and heart attack, and subsequent surgery and hospitalization, beginning July 31, 2010. [AR at 14, 52, 96, 160.] The ALJ observed that, despite plaintiff's complaints of chest pain [see, e.g., AR at 136], "a recent echocardiogram was normal and he has not been diagnosed with coronary artery disease." [AR at 14; see AR at 780-83, 785, 789.] He also cited treatment records from November 23, 2010, "reflect[ing] that [plaintiff] had no chest pain[] and no leg swelling." [AR at 14, see AR at 772.] Additionally, the ALJ considered the "Internal Medicine Consultation" report, dated April 19, 2011, by Dr. Helen Rostamloo, which he found "essentially unremarkable" [AR at 14, see AR at 785-90], and noted that, upon

discharge from the hospital following a procedure on November 7, 2011, the physician's notes "simply recommended that [plaintiff] stop smoking, eat a regular diet, change some of his medications, and follow-up thereafter." [AR at 15; see AR at 849.] Thus, substantial evidence supports the ALJ's determination that plaintiff's allegations were not supported by the objective medical evidence.

Second, the ALJ cited medical opinion evidence from "several" physicians who found plaintiff "to be much more capable than he claims." [AR at 17.] Specifically, the ALJ noted that "no examining or reviewing physician has rendered an opinion fully supporting [plaintiff]'s allegations," and cited four physicians' opinions stating that plaintiff could do work. [AR at 14-17.] Moreover, the ALJ found, "[b]ased on Dr. Rostamloo's opinion, as confirmed by the objective evidence," that plaintiff's alleged physical impairments of "history of insulin dependent diabetes mellitus, status post mitral valve replacement, hyperlipidemia, and hypertension," had "no effect on [plaintiff's] functioning." [AR at 14, see AR at 789 (assigning no limitations or restrictions in plaintiff's functional assessment).] Although assigning it less weight than Dr. Rostamloo's opinion, the ALJ also considered the opinion of a nonexaminig physician who opined that plaintiff could perform "light" work, which also contradicted plaintiff's alleged symptoms.[5] [AR at 14; compare AR at 803 (limiting plaintiff to "[s]tand[ing] and/or walk[ing] (with normal breaks) for a total of about 6 hours in an 8-hour workday"), with AR at 143 (plaintiff's allegation that he can stand for only one hour, and walk for only 15 minutes).] With respect to plaintiff's alleged mental impairments, including plaintiff's severe impairment of "depressive disorder, not otherwise specified," the ALJ cited the opinion of Dr. Ernest Bagner, who performed a "Complete Psychiatric Evaluation" of plaintiff on March 15, 2011. [AR at 14, 16, 766-69.] Dr. Bagner opined that plaintiff would have "no limitations interacting with supervisors, peers and the public," "zero to mild limitations completing simple tasks," "mild limitations maintaining concentration and attention and completing complex tasks," and "mild to moderate limitations handling normal

---

[5]   The ALJ noted that, even if he were to find plaintiff limited only to a full range of light work, his ultimate finding of "not disabled" would still "remain the same." [AR at 15.]

1    stresses at work and completing a normal workweek without interruption." [AR at 769.]  The ALJ

2    also cited the opinion of Dr. Jay Rankin [AR at 802-27], a State agency psychiatrist who found

3    that plaintiff "retains the ability to perform unskilled work" where "interpersonal contact is

4    incidental to work performed," "complexity of tasks is learned and performed by rote," and

5    "supervision required is simple, direct and concrete."  [AR at 17; see also AR at 826.]  Thus, the

6    ALJ's rejection of plaintiff's allegations based on the findings of several physicians that he was

7    more capable than he alleged is supported by substantial evidence in the record.  See Johnson

8    v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may properly discredit a claimant's

9    testimony based on contradictions between that testimony and the relevant medical evidence).

10        Third, the ALJ's rejection of plaintiff's credibility because plaintiff "has had no mental health

11   treatment[] consistent with the alleged degree of psychiatric impairment" [AR at 18], is supported

12   by substantial evidence because a review of the record indicates that plaintiff was not being

13   psychiatrically treated.  [See AR at 767 (Dr. Bagner's report, dated March 15, 2011, indicating

14   that plaintiff "is not currently seeing a psychiatrist or counselor"), 827 (Dr. Rankin's finding that

15   "[t]here is no formal mental health treatment or prescribed psych medication").][6]  An ALJ may

16   properly rely on an "unexplained or inadequately explained failure to seek treatment or to follow

17   a prescribed course of treatment" to discredit a claimant's subjective symptom testimony.

18   Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks and citation

19   omitted); see Burch, 400 F.3d at 681 (explaining that an ALJ is "permitted to consider lack of

20   treatment in [his] credibility determination"); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (an

21   "unexplained, or inadequately explained[] failure to seek treatment" is sufficient to discredit

22   allegations of disabling pain).  Additionally, plaintiff asserts that he does take prescription

23   medication for his mental impairment.  [See, e.g., JS at 8, 14, 27; see also AR at 189 ("Claimant's

24   Recent Medical Treatment" form, indicating that plaintiff takes Abilify for "nervousness" and

25   "trouble sleeping.").]  However, given the evidence in the record, including Dr. Bagner's opinion

26

27        [6]   Plaintiff's testimony on this point did not indicate any ongoing psychiatric treatment or

28   counseling.  [See AR at 57.]

11

1    that "if [plaintiff] receives psychiatric treatment, he should be significantly better in less than six

2    months" [AR at 17, 769], the ALJ reasonably concluded that if plaintiff's mental impairment were

3    as severe as alleged, the record would reflect higher levels of treatment.  See Burch, 400 F.3d

4    at 681.

5         Fourth, in discussing plaintiff's "poor work record," the ALJ noted that while plaintiff

6    "apparently worked for five years during 2003 through 2008, he reported no earnings and paid

7    no taxes," and concluded that such "under the table" work weighed against plaintiff's credibility.

8    [AR at 18.]  This finding is supported by plaintiff's testimony, his work history reports and his

9    earning records.  In particular, plaintiff testified that, after arriving in the United States in 2001,

10   he worked as an electrician, a taxi cab driver, and a home attendant caring for his mother.  [AR

11   at 42, 44-47.]  Plaintiff's work history reports similarly indicate that plaintiff worked as an

12   electrician, taxi driver, and In-Home Support Services ("IHSS") provider between 2003 and 2009.

13   [See AR at 109, 128.]  The ALJ properly relied on evidence indicating that plaintiff reported no

14   income at all until his 2008 earnings for his IHSS work to find him less credible.  [AR at 18, 103];

15   see Kleveno v. Colvin, 2013 WL 1628715, *3 (C.D. Cal. Apr. 16, 2013) ("The failure to comply

16   with law and report income may be a legitimate reason to find a claimant less credible."); James

17   v. Astrue, 2012 WL 3206690, *6 (C.D. Cal. Aug. 6, 2012) (finding plaintiff's "failure to comply with

18   the law [by failing to report to the IRS the income from her part-time work for a lawn service]

19   clearly and convincingly detracts from her credibility"); Berger v. Astrue, 516 F.3d 539, 546 (7th

20   Cir. 2008) (finding that the plaintiff's failure to report income on his income taxes "could justify a

21   more skeptical view of his testimony").

22        Fifth, the ALJ's finding that plaintiff's credibility was impacted by contradictions between

23   some of his statements regarding daily activities [AR at 18], is supported by substantial evidence.

24   See Berry, 622 F.3d at 1234 ("[The claimant] was not entirely credible because [of] contradictions

25   between complaints in [his] 2005 activity questionnaire and hearing testimony and some of his

26   other self-reported activities").  Specifically, the ALJ noted that plaintiff reported, during Dr.

27   Bagner's psychiatric evaluation, that he "is able to dress and bathe himself," "do household

28   chores and cook," and "is able to manage money."  [AR at 767.]  This information differed from

1   information in plaintiff's December 14, 2010, Function Report, in which he indicated that he is

2   unable to do any house or yard work, does not prepare his own meals, and has difficulty with

3   money, because he "forget[s] to take [his] change," and it is "hard for [him] to calculate money."

4   [AR at 140-42.][7]   The ALJ indicated that, although the activities that plaintiff admitted to Dr.

5   Bagner do not, "by themselves, necessarily equate with work activity or show the ability to

6   engage in work," they do "suggest that [plaintiff] has capacities than [sic] he has stated in the

7   testimony and written statements."  [AR at 18]; see Valentine v. Comm'r Soc. Sec. Admin., 574

8   F.3d 685, 693 (9th Cir. 2009) ("The ALJ recognized that this evidence did not suggest [the

9   claimant] could return to his old job ..., but she thought it did suggest that [the claimant]'s later

10   claims about the severity of his limitations were exaggerated.").[8]

11          In sum, because the ALJ provided clear and convincing reasons to discount plaintiff's

12   subjective allegations, his credibility determination must be upheld.  See Green, 803 F.2d at 532.

13   Remand is not warranted on this issue.

14          **2.      Lay Witness Testimony**

15          Plaintiff argues that the ALJ improperly disregarded the third party statements of plaintiff's

16   mother regarding plaintiff's functional limitations.  [JS at 12-13, 25, 28.]

17          An ALJ may consider lay witness testimony to determine the severity of a claimant's

18   impairments and how the impairments affect his ability to work.  Stout v. Comm'r, Soc. Sec.

19   Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir.

20   1996); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Lay witnesses include spouses,

21   parents and other care givers, siblings, other relatives, friends, neighbors, and clergy.  20 C.F.R.

22   §§ 404.1513(d)(4),  416.913(d)(4).  Thus, lay witness testimony by friends and family members

23   ────────────────

24   [7]      Plaintiff's responses within his Function Report are also not entirely consistent.  Plaintiff
     indicates both that he is able to go out alone, whether walking, driving a car, or riding as a
25   passenger in a car, and explicitly indicates that he does drive, and also that he does need
     someone to accompany him.  [AR at 141.]  Elsewhere in the same report, plaintiff indicates both
26   that he does not spend time with others, but also states that he visits friends.  [AR at 142.]

27   [8]      To the extent plaintiff's apparently inconsistent statements may be the result of plaintiff's
     confusion or lack of understanding regarding the questions, the Court finds that the ALJ provided
28   alternative valid reasons, supported by substantial evidence, to discount plaintiff's credibility.

1  who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence"

2  that the ALJ must consider.  See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987);

3  Smolen, 80 F.3d at 1289 (testimony from lay witnesses, who see the plaintiff on a daily basis

4  and are often family members, is of particular value); Dodrill, 12 F.3d at 919 ("[a]n eyewitness

5  can often tell whether someone is suffering or merely malingering ... this is particularly true of

6  witnesses who view the claimant on a daily basis.").  The ALJ may discount the testimony of lay

7  witnesses only for "reasons that are germane to each witness."  Dodrill, 12 F.3d at 919;

8  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

9      In a Third Party Function Report dated December 14, 2010 [AR at 118-27], plaintiff's mother

10  indicated that plaintiff no longer drives a taxi cab because "he is nervous and gets tired too quick."

11  [AR at 120.]  She reported that plaintiff "has difficulty falling asleep, staying asleep and waking up

12  earlier [sic]," and feels "unrested in the morning."  [Id.]  She stated that plaintiff does not prepare

13  meals or do household chores because "[h]e cannot concentrate," and becomes "nervous."  [AR

14  at 121-22.]  Plaintiff's mother indicated that plaintiff's "illness, injuries, or conditions affect" his

15  ability to lift, stand, walk, climb stairs, kneel, hear, remember, concentrate, and understand.  [AR

16  at 124.]  She wrote that plaintiff can walk for a "half block" before needing to stop and rest, and

17  that plaintiff must rest for "2-3 minutes" before he can resume walking. [AR at 125.]  She indicated

18  that plaintiff can pay attention for "10-15 minutes," that plaintiff does not "finish what he[] starts,"

19  and "has problems with speech and communication."  [AR at 125-26.]

20      In his decision, the ALJ assigned "little weight" to plaintiff's mother's testimony, because

21  "[t]he statement [was] not sworn," plaintiff "did not present the declarant as a witness at the

22  hearing," and there is a "close relationship" between plaintiff's mother and plaintiff, "which may

23  have influenced her desire to help [plaintiff]."  [AR at 18.]  The ALJ also found that plaintiff's mother

24  "can only report her observations," which "may not be reflective of [plaintiff]'s maximal capacities,"

25  and "the account conflicts with and fails to overcome the probative effect of the medical evidence

26  in this case."  [Id.]

27      The ALJ's finding that plaintiff's mother's testimony does not overcome the medical

28  evidence in the record constitutes a germane reason supported by substantial evidence for

1  rejecting her testimony.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for

2  which an ALJ may discount lay testimony is that it conflicts with medical evidence.") (citation

3  omitted); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (same); see also Bayliss v.

4  Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for

5  discrediting the testimony of lay witnesses.").  Here, plaintiff's mother indicated that plaintiff does

6  not prepare his own meals, and is unable to do any "household chores."  [AR at 121.]  Yet, as

7  discussed above, the ALJ noted four physicians' opinions stating that plaintiff could do work.  [AR

8  at 14-17.]  Moreover, in finding that plaintiff's impairments have "no effect" on his functioning, the

9  ALJ properly afforded the opinions of the two examining physicians greater weight than the

10  opinions of non-examining physicians.  [AR at 14-15]; see Lester, 81 F.3d at 830 ("The opinion

11  of an examining physician is ... entitled to greater weight than the opinion of a nonexamining

12  physician.").   Additionally, as plaintiff's mother's statements were substantially the same as

13  plaintiff's responses in his own function report [compare AR at 118-27 (plaintiff's mother's Third

14  Party Function Report), with 138-45 (plaintiff's function report)], the ALJ's germane reasons for

15  rejecting plaintiff's testimony similarly apply to plaintiff's mother's testimony.  See Valentine, 574

16  F.3d at 694 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ

17  need only point to those reasons when rejecting similar testimony by a different witness.").

18       Moreover, while it may have been improper for the ALJ to discount plaintiff's mother's

19  allegations on the grounds that she has a "close relationship" with plaintiff "which may have

20  influenced her desire to help [plaintiff]" ([AR at 18]; see Smolen, 80 F.3d at 1289; Regennitter, 166

21  F.3d at 1298; Johnson v. Astrue, 2008 WL 4553141, at *6 (C.D. Cal. Oct. 9, 2008) ("the Ninth

22  Circuit has consistently held that bias cannot be presumed from a familial relationship")), because

23  the ALJ provided at least one valid reason germane to plaintiff's mother for discrediting her

24  testimony, any error was harmless.  See Stout, 454 F.3d at 1054-55 (finding harmless error where

25  the ALJ "provided numerous other record-supported reasons for discrediting the claimant's

26

27

28

1    testimony," such that "the ALJ's error did not materially impact his decision"); Burch, 400 F.3d 676

2    (holding that an ALJ's decision will not be reversed for errors that are harmless).[9]

3          In short, the ALJ's rejection of plaintiff's mother's testimony is supported by substantial

4    evidence and remand is not warranted on this claim.[10]

5

6    **B.    THE ALJ PROPERLY CONSIDERED MEDICAL RECORDS AND COMBINED EFFECT**

7    **OF IMPAIRMENTS**

8          Plaintiff contends that the ALJ failed to properly consider the medical records and the

9    combination of plaintiff's impairments. [JS at 25-32, 34-36.]  Specifically, plaintiff asserts that the

10   ALJ "incompletely summarized the extent of [plaintiff]'s problems" [JS at 26-29, 34-35], and that

11   the ALJ did not consider the combined effect of all of plaintiff's impairments on his ability to

12   function.  [JS at 30-32, 35-36.]

13         **1.    The ALJ's Summary of Plaintiff's Impairments**

14         Plaintiff contends that the ALJ "incompletely summarized" plaintiff's impairments.  [JS at

15   26.]  Specifically, plaintiff argues that the ALJ "failed to acknowledge that [plaintiff] has chronic

16   coronary atherosclerosis," and "failed to properly consider the extent" of various other "continuing

17   symptoms and limitations," including "acute myocardial infarction, coronary artery bypass graft,

18   mitral valve regurgitation with valve replacement, history of acute respiratory failure, inflammation

19   and sepsis, intracranial hemorrhagic stroke and deafness in one ear and impaired hearing in the

20   remaining ear."  [Id.]

21

22       [9]    As the ALJ provided at least one valid and germane reason to discount plaintiff's mother's

23   statements, the Court exercises its discretion not to discuss the ALJ's remaining reasons.

24       [10]   Plaintiff's contention that the ALJ improperly determined plaintiff's RFC is based on

25   plaintiff's argument that the ALJ rejected plaintiff's credibility without providing clear and convincing
     reasons.  [See JS at 15.]  Having examined the record and determined that the ALJ did provide

26   clear and convincing reasons for his credibility determination, the Court also finds, as discussed
     in greater detail infra, that the RFC assessed by the ALJ properly included all of the limitations that

27   were found by the ALJ to be supported by substantial evidence.  See, e.g., Barrientez v. Colvin,
     517 Fed.Appx. 602, 604 (9th Cir. 2013) ("[T]he ALJ properly included all limitations that he found

28   credible and supported by substantial evidence in the [RFC] finding.").

Having reviewed the record, the Court concludes that the ALJ properly evaluated all of the medical opinions together with the relevant evidence in the record. See 20 C.F.R. § 416.927 ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). Although plaintiff contends that the ALJ failed to "acknowledge" or "consider" various medical conditions in the record, he does not point to any specific records, and the Court finds none, that were before the ALJ but not reviewed.[11] [JS at 26.] In his decision, the ALJ noted that the "evidence reflects that [plaintiff] had a stroke in July 2010, and underwent a mitral valve replacement." [AR at 14.] The ALJ observed that, "[w]ith respect to his mechanical mitral valve replacement, [plaintiff] stated that he has been on Warfarin 5 mg. daily and Aspirin 81 mg[.] daily. According to the records, [plaintiff] has been following up with his cardiologist for checking regular PT/INR,[12] and stated that he has chest pain on a regular basis." [Id.] The ALJ noted that "a recent echocardiogram was normal and [plaintiff] has not been diagnosed with coronary artery disease," that plaintiff reported taking

---

[11]   Plaintiff submitted an August 17, 2011, decision by the California Department of Health Care Services (CDHCS) to the Appeals Council after the ALJ issued his decision. [See AR at 4, 860-68.] Plaintiff now argues that the CDHCS decision to issue Medi-Cal benefits to plaintiff for the period beginning August 1, 2010, and ending on May 30, 2011 [AR at 860-68], "should be considered as opinion supportive of [plaintiff]'s SSI [c]laim." [JS at 31.] Evidence submitted to the Appeals Council must be considered by the Court in evaluating whether the ALJ's decision was supported by substantial evidence. Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."). As an initial matter, a CDHCS decision finding plaintiff disabled is not binding on the Administration. See 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability."). Further, as the CDHCS decision did not include VE testimony or plaintiff's hearing testimony [see AR at 868], the Court concludes that the CDHCS decision is not probative of whether substantial evidence supports the ALJ's decision. See Brewes, 682 F.3d at 1159-60.

[12]   "The [prothrombin time ('PT')] and [International Normalized Ratio ('INR')] are used to monitor the effectiveness of the anticoagulant warfarin. This drug affects the function of the coagulation cascade and helps inhibit the formation of blood clots. It is prescribed on a long-term basis to people who have experienced recurrent inappropriate blood clotting." See PT and INR, LAB TESTS ONLINE, http://labtestsonline.org/understanding/analytes/pt/tab/test/ (last visited May 13, 2014).

medication for his hyperlipidemia and hypertension, and that despite "elevated" blood pressure readings during an examination on April 19, 2011, examining physician Dr. Rostamloo found that plaintiff had "no limitations whatsoever." [AR at 14; see also 785-90.]  The ALJ also cited a treatment record from November 23, 2010, "reflect[ing] that [plaintiff] had no chest pain, and no leg swelling." [AR at 14, see AR at 772.]

In addition to considering the opinions of two examining physicians, the ALJ also considered the opinions of the non-examining State agency physicians [AR at 14-15], noting that all of the physicians opined that plaintiff could do some level of work.  [See AR at 14-15, 769 (Dr. Bagner's assessment that plaintiff would have "no limitations interacting with supervisors, peers, and the public," "zero to mild limitations completing simple tasks," "mild limitations maintaining concentration and attention and completing complex tasks," and "mild to moderate limitations handling normal stresses at work and completing a normal workweek without interruption"), 789 (Dr. Rostamloo's assessment that plaintiff is able to function without any physical limitations or restrictions), 809 (State agency consulting physician's assessment that plaintiff can perform "light" work)]; 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical and psychological consultants ... are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants ...

1   as opinion evidence...").[13]   Thus, the Court concludes that the ALJ properly considered the
2   medical evidence in the record.

3        2.        The ALJ's Consideration of the Combination of Plaintiff's Impairments

4        Plaintiff contends that the ALJ did not consider the combined effect of all of plaintiff's
5   impairments on his ability to function.  [JS at 30-32, 35-36.]  Specifically, plaintiff argues that the
6   ALJ "should have considered [plaintiff]'s depression and anxiety as supported by the records,
7   standing alone and in combination with his physical limitations."  [JS at 30.]

8        In fact, the ALJ's decision shows that he considered plaintiff's mental impairments in
9   combination with plaintiff's other alleged impairments and the support, or lack of support, for them
10  in the record.  As an initial matter, the ALJ expressly noted, at step three, that plaintiff did not have
11  "an impairment or combination of impairments that meets or medically equals the severity" of an
12  impairment in the Listing.  [AR at 15.]  The ALJ further indicated that he considered "all symptoms
13  and the extent to which these symptoms can reasonably be accepted as consistent with the
14  objective medical evidence and other evidence," pursuant to 20 C.F.R. § 416.929 and Social
15  Security Ruling ("SSR") 96-4p,[14]  1996 WL 374187 ("Policy Interpretation Ruling Titles II and XVI:

16  ───────────────────

17      [13]   Plaintiff cites a "[l]etter from Malika Saoud, [Master of Social Work ('MSW')] of the
18  Glendale Adventist Medical Center," dated August 12, 2010, which states that plaintiff "is currently
    hospitalized at Glendale Adventist Medical Center after presenting to the emergency room for
18  severe chest pain.  He was diagnosed with severe, acute ischemic mitral valve regurgitation status
19  post myocardial infarction, cardiogenic shock and elevated troponins. As a result, he had to
    undergo heart surgery (mitral valve replacement).  He had procedures including left heart
20  catheterization, selective coronary angiograms, left ventriculogram, right femoral artery angiogram.
    Such proc[e]dures and diagnoses will affect his work ability."  [AR at 856.]  As an initial matter, the
21  opinion of Saoud, a social worker, falls into the category of "other sources," as opposed to that
22  of "acceptable medical source," for purposes of establishing the existence of a medically
    determinable impairment.  See 20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ is not required
23  to give opinions from "other sources" the same weight as those from an "acceptable medical
    source."  See Zamorano v. Astrue, 2009 WL 1769581, *4 (C.D. Cal. June 15, 2009).  Moreover,
24  although MSW Saoud indicates that plaintiff's "work ability" would be "affected," she does not
25  indicate the extent or the duration of any effects, and the ALJ could reasonably conclude that the
    letter referred only to the period of recovery for the surgical procedures detailed in the letter.

26      [14]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's
27  implementing regulations and the agency's policies.  SSRs are binding on all components of the
    [Social Security Administration].  SSRs do not have the force of law.  However, because they
28                                                                              (continued...)

1  Symptoms, Medically Determinable Physical and Mental Impairments, and Exertional and

2  Nonexertional Limitations") and 96-7p, 1996 WL 374186 ("Policy Interpretation Ruling Titles II and

3  XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

4  Statements"). [AR at 16.]  Indeed, the ALJ considered evidence of plaintiff's "stroke in July 2010,"

5  and his "mitral valve replacement."  [AR at 14.]  He noted plaintiff's "history of insulin dependent

6  diabetes mellitus," and the medication that he takes to "control[] his blood sugars."  [Id.]  He also

7  considered plaintiff's "elevated" blood pressure during a physical examination.  [Id.]  With respect

8  to plaintiff's mental impairment, as discussed in greater detail above, the ALJ based his "mental

9  [RFC] assessment" on the medical opinion of examining physician Dr. Bagner, "who essentially

10  found [plaintiff] capable of performing at least simple, routine and repetitive work" [AR at 16], and

11  the opinions of a State agency psychiatrist, "who found that [plaintiff] retains the ability to perform

12  unskilled work, where interpersonal contact is incidental to work performed ... [;] complexity of

13  tasks is learned and performed by rote ... [;] and supervision required is simple, direct and

14  concrete."  [AR at 17.]   Having considered these impairments, along with those physical

15  impairments alleged but found to be non-severe, both alone and in combination, the ALJ

16  reasonably found that plaintiff's medically determinable impairments did not significantly limit his

17  ability to perform basic work activities.  [AR at 16.]   Remand is not warranted on this claim.

18  See Reddick, 157 F.3d at 720-21 ("If the evidence can reasonably support either affirming or

19  reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.").[15]

20  /

21  /

22  /

23

24      [14](...continued)

25  represent the Commissioner's interpretation of the agency's regulations, we give them some
deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."

26  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

27      [15]   Plaintiff's assertion that the ALJ's hypotheticals, as posed by interrogatory to the VE,
were not "inclusive of [plaintiff's] problems and limitations"  [JS at 34], is addressed infra, in

28  Section C.

**C.     THE ALJ PROPERLY RELIED ON VE TESTIMONY**

Plaintiff contends that the ALJ improperly relied on VE testimony.  [JS at 36-38, 40.]
Specifically, plaintiff argues that the ALJ erroneously "relied on hypothetical questions posed to
the VE [that] did not reflect the nature and extent of [plaintiff]'s symptoms and limitations."  [JS
at 37.]

The ALJ presented a set of hypothetical questions to the VE in interrogatories on March
26, 2012.  [AR at 194-202.]  In one hypothetical question, the ALJ asked the VE to assume an
individual who could "lift and perform a full range of work, except this person may frequently
perform detailed, complex work, but may perform a full range of simple, routine and repetitive
work with occasional contact with co-workers, supervisors and the general public.  This person
may perform work at stress leve[l] four (4) on a scale of one to ten, ten being, by example, the
work of an air traffic controller and one being the work as a night dishwasher as these
occupations are generally performed in the national economy."  [AR at 211.]  In response, the
VE indicated this hypothetical individual could perform work at all exertional levels,[16] and that
there would be jobs available, including as a polisher, packager, and yardworker.  [AR at 211-12.]
In a second hypothetical, the ALJ asked the VE to assume an individual "identical to [plaintiff] and
who possesses the same capabilities and limitations as described by [plaintiff] in [his] testimony."
[AR at 213.]  The VE responded that plaintiff's alleged "significant limitations of activities of daily
living" meant that "there would be no work available in the local or national economies" for such
an individual.  [Id.]

As an initial matter, the Court observes that the ALJ's first hypothetical to the VE included
all of the limitations in the RFC.  [See AR at 16, 19-20, 211.]  Therefore, the ALJ properly relied
on the VE's testimony in response to the first hypothetical, which contained all of the limitations
that the ALJ found to be credible and which are supported by substantial evidence in the record.
See Bayliss, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of

---

[16]   Specifically, the VE indicated that the hypothetical person "may work at the [h]eavy,
moderate, light as well as sedentary levels."  [AR at 211.]

1   the limitations that the ALJ found credible and supported by substantial evidence in the record.

2   The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was

3   proper."); Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989) (holding that it is proper

4   for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record).

5   The ALJ was not obligated to consider VE testimony based on the second hypothetical posed

6   to the VE, which was explicitly based solely on plaintiff's discredited subjective symptom

7   testimony.  [AR at 213; see also AR at 17-18]; see Rollins, 261 F.3d at 863 ("the ALJ did not err

8   in omitting the other limitations that [plaintiff] had claimed, but had failed to prove").[17]

9          In sum, the ALJ did not err in relying on VE testimony in finding that there are jobs

10  available in the regional and national economies that plaintiff can perform, and remand is not

11  warranted on this claim.

12  /

13  /

14  /

15  /

16  /

17

18       [17]   Plaintiff additionally argues that, as it is "unknown as to what [plaintiff's non-attorney
19  representative] understood about 'interrogatories,' ... the non-attorney's failure to respond to the
    ALJ's interrogatories should not be held against [plaintiff]." [JS at 38.]  The Court observes that
20  the ALJ wrote to plaintiff's non-attorney representative on March 26, 2012, indicating that the ALJ
    had "determined that [he would] require the opinion of a vocational expert[, and] enclosing the
21  interrogatories to be propounded to the vocational expert for your inspection and possible
    objection." [AR at 203.]  The ALJ also wrote: "If I do not receive a response from you within 10
22  days of the date you receive this notice, I will assume that you do not wish to submit any written
    statements or records." [Id.]  The ALJ's letter included an explanation of "Actions You Have A
23  Right To Take," which provided further detail as to how the representative may respond. [AR at
    204.]  In a second letter to plaintiff's non-attorney representative on April 13, 2012, the ALJ
24  enclosed the VE's responses to interrogatories and provided plaintiff's non-attorney representative
    an opportunity to submit "any objections to answers to interrogatories," as well as additional
25  evidence, and cross-interrogatories.  [Id.]  Under the circumstances, the Court finds the ALJ's
26  letters and explanations were clear and sufficient, and accepts the ALJ's reasonable assumption,
    given the lack of any response to the ALJ's letters regarding interrogatories, that plaintiff's non-
27  attorney representative did not wish to submit any written statements, objections, or additional
28  records.

## VI.

## <u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **denied**; (2) the decision of the Commissioner is **affirmed**; and (3) the Clerk of the Court shall serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 20, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE